IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-00224-MSK-CBS

JAMES McGRATH,

        Plaintiff,

v.

CENTRAL MASONRY CORP.,

        Defendant.

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for Summary Judgment **(# 21)**, the Plaintiff's response **(# 22)**,[1] and the Defendant's reply **(# 24)**; and the Defendant's Motion to Strike **(# 27)** the Plaintiff's supplement **(# 26)** to his response to the summary judgment motion, the Plaintiff's response **(# 29)**, and the Defendant's reply **(# 30)**.

## FACTS

The facts of this case are fairly simple. The Plaintiff was employed by the Defendant as a Foreman. In that capacity, the Plaintiff was required to, among other things, attend monthly

---

[1] Portions of the Plaintiff's filings are difficult to read. The text is sometimes compressed in a manner similar to poor-quality facsimiles, and sometimes suffers from an inconsistent density of ink from letter to letter, somewhat like the product of a printer with insufficient toner. Although the text of the Plaintiff's brief is mostly legible, the contents of his exhibits, particularly condensed deposition transcripts and a document concerning Spanish classes, are often not. The Court has carefully studied the Plaintiff's submissions to the extent they are even remotely legible, but advises the Plaintiff and his counsel that the failure to submit plainly legible filings in the future may constitute grounds for striking.

meetings, take mandatory Spanish classes, and drive to the Defendant's office each week to pick up workers' paychecks, all in addition to his regular workday duties. As Foreman, the Plaintiff had no on-site supervisor, and was responsible for reporting his own time, including any claimed overtime, to the Defendant. During the period of time at issue, the Plaintiff did report, and was paid for, approximately 50 hours of overtime. However, the Plaintiff contends that, with the Defendant's knowledge, he did not report overtime spent attending meetings or Spanish classes or picking up employee paychecks. His first cause of action thus alleges a failure to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C § 207.

The Plaintiff's second claim relates to a memo issued on December 3, 2004. The memo states that, due to the Defendant having had a profitable year, "[it has] decided to pay out bonuses to specific individuals. Below you will see the specific amount of the bonus." The memo advised the Plaintiff that his bonus was $ 3,000. The memo stated that "This bonus will be paid out in stages as we receive payment from the Black Hawk project," and further advised employees that information about the bonuses must remain confidential, and that disclosure as to the fact or amount of a bonus would result in recision of the bonus. Although the Plaintiff received an initial payment of the bonus in the amount of $ 1,380, he left employment before the remainder of the bonus had been paid. Upon his separation, the Defendant refused to pay the remaining amount, giving rise to the Plaintiff's second claim for failure to pay compensation due and owing in violation of the Colorado Wage Claim Act, C.R.S. § 8-4-101 *et seq*.

The Defendant moves **(# 21)** for summary judgment on both claims. With regard to the overtime claim, it argues that the Plaintiff cannot show that the Defendant knew he was working unreported overtime. With regard to the bonus claim, the Defendant contends that the bonus was

discretionary, and subject to revocation by the Defendant in its discretion. The Plaintiff filed a response to the motion, asserting facts and law in opposition, and the Defendant filed a reply.

Approximately six weeks after the Defendant's reply, the Plaintiff filed a "supplement" to his summary judgment response, purporting to set forth additional evidence that had been obtained in discovery taken after the date of the Plaintiff's formal response. The Defendant moved to strike **(# 27)** the Plaintiff's supplemental response, arguing, among other things, that the supplemental response was actually a motion to supplement, requiring advance conferral under D.C. Colo. L. Civ. R. 7.1(A), that the Plaintiff had not requested leave under Fed. R. Civ. P. 56(f) to conduct additional discovery in response to the summary judgment motion. The Defendant requested that the supplemental response be stricken, or, in the alternative, that the Defendant have the opportunity to file a sur-reply.

## ANALYSIS

### A. Motion to Strike

The Court turns first to the Motion to Strike. Although it finds some appeal in some of the Defendant's arguments, particularly the premise that the supplemental response required leave of the Court and conferral under Local Rule 7.1, the Court need not formally resolve the matter. The Court has examined the contents of the supplemental response and finds nothing within it that would otherwise alter the Court's disposition of the substantive summary judgment motion. Accordingly, the Court denies the Motion to Strike as moot.

### B. Motion for Summary Judgment

#### 1. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

2. Overtime claim

The Fair Labor Standards Act provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). To establish such a claim, the Plaintiff must show: (i) that he actually worked overtime; (ii) that the amount of overtime can be shown by justifiable and reasonable inference; and (iii) that the employer had actual or constructive knowledge of the overtime. *See McMillin v. Foodbrands Supply Chain Services, Inc.*, 272 F.Supp.2d 1211, 1217 (D. Kan. 2003).

The Defendant expressly concedes that, for purposes of this motion, the Plaintiff's time spent in attending meetings and Spanish classes and time spent picking up employee paychecks is compensable employment, and does not dispute that the Plaintiff might be able to establish the amount of unpaid time spent on these activities. However, it contends that, because the Plaintiff never advised the Defendant of his time spent in these activities, it had no knowledge that he was exceeding 40 hours of work in a week, or that, if the Defendant had such knowledge, it was not aware that the Plaintiff was not claiming that time as overtime.

An employer armed with knowledge that an employee is working overtime cannot stand idly by and allow the employee to perform the work without proper compensation, even if the employee does not make a claim for overtime compensation. *Harvill v. Westward Communications, Inc.*, 433 F.3d 428, 441 (5th Cir. 2005). At the same time, if the employee fails to notify the employer, or deliberately prevents the employer from acquiring knowledge of the

5

overtime work, the employer's failure to pay an overtime premium does not violate the Fair Labor Standards Act. *Id.*

Here, the Defendant cites to evidence that shows that the Plaintiff's work was not directly supervised, and thus, the Plaintiff was responsible for self-reporting all of his working time. The Defendant maintained a policy requiring employees to obtain approval for overtime. Neil House, the Defendant's President, states in an affidavit that the Defendant has no way of knowing that an employee has worked overtime unless either the employee receives permission to do so, or reports such overtime on the employee's timesheet. *Docket* # 21-4, ¶ 9. The record indicates that the Plaintiff neither sought approval for overtime work as a result of the additional tasks described above, nor that he actually reported the time he spent on such tasks. Thus, it appears that the Defendant had no knowledge that the time spent by the Plaintiff performing the extra tasks at issue here were not included in his self-reported timesheet.

The Plaintiff's response wanders somewhat afield from this issue. The Plaintiff cites caselaw for various uncontroverted legal propositions, then asserts that the Defendant had both actual and constructive knowledge of the Plaintiff's overtime. However, rather than refer to the evidence that establishes this knowledge, the Plaintiff erroneously asserts that "[t]he main defense asserted by the Defendant is that the meetings were not mandatory and thus, not compensable," *Docket* # 22 at 4, and refers to evidence for the proposition that the meetings and Spanish classes were mandatory. After reciting such evidence – *e.g.* that employees were told they must attend the meetings or classes or be demoted – the Plaintiff asserts that "regardless of whether the Plaintiff submitted timesheet" reflecting time spent in the meetings and classes, "it is undisputed that the employer knew the meetings were held ....., that foremen were expected to attend, and

6

that [the Plaintiff] attended the meetings." From this, the Plaintiff asserts that the Defendant had "actual knowledge of the hours being worked and the fact that employees were not compensated for that time." *Id.* at 4-5.

The Plaintiff's argument is premised upon certain facts that have not been established. Taking the proffered evidence in the light most favorable to the Plaintiff, the Court accepts that the Defendant knew that the Plaintiff was engaged in compensable employment time for attending meetings and Spanish classes and picking up employee paychecks. However, this fact alone does not establish the Defendant's knowledge that such tasks, coupled with the Plaintiff's regular duties, pushed the Plaintiff over the 40 hour-per-week threshold. House's affidavit states that the Defendant "had no reason to know that [the Plaintiff] engaged in any [work]-related activities without reporting his time or adjusting his work schedule to maintain his forty-hour workweek." Thus, the evidence suggests that, even if attendance at the meetings and classes constituted compensable time, the Defendant did not know that such time was not included on Plaintiff's timesheets nor that the Plaintiff had not been paid for such activities. Without proof that the Defendant knew or should have known that the Plaintiff's self-reported timesheets did <u>not</u> include time spent on, for example, meetings and classes, the Plaintiff cannot show that the Defendant knew that the Plaintiff was working overtime. The Court has carefully reviewed the Plaintiff's brief and supporting evidence, and has located nothing therein to suggest that the Defendant was somehow aware, or should have been aware, that the Plaintiff was omitting the time he spent on these additional tasks from his timesheet.[2]

---

[2]In analyzing this matter, this Court has given no consideration whatsoever to the 10th Circuit's unpublished, non-precedential opinion in *Whitaker v. Pacific Oil Enterprises, Inc.*, 956 F.2d 1170, 1992 WL 44729 (10th Cir, 1992) (table, text in Westlaw. However, the Court notes

Accordingly, the Court finds that the Plaintiff has failed to come forward with facts establishing that the Defendant had actual or constructive knowledge that his self-reported timesheets did not include the time spent on meetings and classes and picking up paychecks. Because the Defendant had no actual or constructive knowledge that the Plaintiff was engaging in unpaid overtime work, the Defendant is entitled to summary judgment on the overtime claim.

**C. Bonus claim**

The Colorado Wage Claim Act, C.R.S. § 8-4-101 requires that an employer promptly pay all "wages and compensation" owing to an employee at the cessation of the employment relationship. C.R.S. § 8-4-109. "Wages and compensation" is defined to include "bonuses or commissions earned for labor or services performed in accordance with the terms of any employment agreement." C.R.S. § 8-4-101(8)(II).

Colorado courts have endorsed various factors in evaluating whether a particular type of bonus falls within the Act, but as relevant here, the analysis reduces to an examination of whether the bonus was "vested" at the time of termination. *Fang v. Showa Entetsu Co.*, 91 P.3d 419, 422 (Colo. App. 2003); *Montemayor v. Jacor Communications, Inc.*, 64 P.3d 916, 923 (Colo. App. 2002), *both citing Rohr v. Ted Neiters Motor Co.*, 758 P.2d 186, 188 (Colo. App. 1988) (examining additional factors such as the ratio of bonus to underlying salary, and whether bonus was a component of a deferred compensation scheme).

Whether a bonus is vested at the time of termination is determined by the terms of the employment agreement in effect. *Fang*, 91 P.3d at 422. An employee's substantive right to compensation and the conditions that must be satisfied to earn it are matters left to the negotiation

---

that it has reached the same conclusion on essentially the same facts.

and bargaining of the employer and employee, and are determined by reference to the parties' employment agreement. *Barnes v. Van Schaack Mortgage*, 787 P.2d 208, 210 (Colo. App. 1990).

Here, there is no evidence of an employment agreement existing between the parties, much less one that specifies the terms under which a bonus offered to the Plaintiff would be deemed vested. There is no evidence of "negotiation or bargaining" by the parties as to the amount of the bonus or the terms by which it would be earned and paid; rather, the bonus was a gratuitous payment unilaterally set by the Defendant and offered in recognition of a profitable year. In all respects, the bonus appears to be precisely the kind of "discretionary, gratuitous benefit offered to employees as an act of benevolence" that other courts have found to fall outside the definition of wages. *Fang,* 91 P.3d at 423, *citing Wank v. Saint Francis College*, 740 N.E.2d 908, 913 (Ind. Ct. App. 2000).

The Plaintiff does not particularly argue that the bonus became vested under the terms of any sort of employment agreement; rather, he argues – without citation to evidence – that he "provided consideration for the bonus by continuing his employment." To the extent that this is an argument that the bonus memo created some sort of contractual relationship between the parties, it is unavailing for a variety of reasons that need not be elaborated upon.[3] In any event, even assuming the bonus memo constituted a contract between the parties, it did not address the critical question of whether the bonus vested prior to the Plaintiff's resignation from employment

---

[3]The deficiencies in any contract theory are aptly demonstrated by this hypothetical: assume that the Plaintiff was told on December 3, 2004, that he would be given a bonus at the end of the month, and that at the end of the following workweek, the Defendant explained that, due to a sudden financial reversal, it was rescinding that bonus. Clearly, the Plaintiff would have no recourse to immediately sue for breach of contract in order to obtain the once-promised bonus.

in June 2005. Without any indication of the parties' mutual intent as to this situation would be handled, the Court cannot say that there was any agreement between the parties on this point, and thus, nothing to enforce under the terms of the Wage Claim Act.

The Court is sympathetic to the Plaintiff's frustration at being promised something, only to have that expectation subsequently quashed. However, the Court is limited to enforcing only those rights that the law recognizes, and only in those situations where all of the legal requirements are met. Because the Plaintiff fails to show that the promised bonus constitutes "wages and compensation" under the Wage Claim Act, as that term is defined under Colorado law, the Defendant is entitled to summary judgment on the second claim for relief.

## **CONCLUSION**

For the foregoing reason, the Defendant's Motion for Summary Judgment **(# 21)** is **GRANTED**. Simultaneously with this Order, judgment shall enter in favor of the Defendant on both claims in the Complaint. The Defendant's Motion to Strike **(# 27)** is **DENIED AS MOOT**.

Dated this 7th day of August, 2007

                                                   **BY THE COURT:**

                                                   */s/ Marcia S. Krieger*

                                                   Marcia S. Krieger
                                                   United States District Judge