**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 06-cv-00224-CMA-CBS

JAMES MCGRATH,

    Plaintiff,

v.

CENTRAL MASONRY CORP.,

    Defendant.

**ORDER REGARDING LIQUIDATED DAMAGES**

This matter is before the Court on Plaintiff's request for liquidated damages pursuant to 29 U.S.C. § 216(b).  For the following reasons, the request is granted.

**BACKGROUND**

This is an employment case.  Plaintiff alleged that Defendant violated the Fair Labor Standards Act ("FLSA") by failing to pay him overtime wages for work he performed as a masonry foreman.  Plaintiff's claim arose out of time he spent attending mandatory safety meetings, picking up paychecks and performing other peripheral tasks related to his position.  Plaintiff was responsible for keeping track of and reporting his own hours, and he admitted that he did not report the time for which he sought compensation to Defendant on his time sheets.  However, he alleged that Defendant knew about the time that Plaintiff spent on these peripheral tasks and, nevertheless, failed to pay him overtime wages in accordance with the FLSA.

The parties tried the matter to a jury in March and April 2009. The jury found in Plaintiff's favor and awarded him $10,753.13 in unpaid overtime wages. That is, the jury concluded that Defendant knew or should have known that Plaintiff worked hours for which he did not receive overtime pay. Critically for purposes of this Order, the jury also found that Defendant willfully violated the FLSA, thereby entitling Plaintiff to a three-year statute of limitations, instead of the usual two-year statute of limitations for non-willful violations. *See* 29 U.S.C. § 255. By finding that Defendant's violation was willful, the jury concluded that Defendant knew or recklessly disregarded the matter or whether its conduct violated the FLSA. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (establishing the legal standard for a willful violation under § 255).

After the jury rendered its verdict, Plaintiff requested liquidated damages under 29 U.S.C. § 216(b) and pre-judgment interest,[1] and the Court ordered the parties to submit simultaneous briefing on these issues. (Doc. # 88.) The parties submitted their briefs and the Court now addresses Plaintiff's request.

## APPLICABLE LAW

Under the FLSA, an employer that violates 29 U.S.C. § 207 is typically liable for liquidated damages in an amount equal to the amount of unpaid overtime compensation. *See* 29 U.S.C. § 216(b); *Department of Labor v. City of Sapulpa*, 30 F.3d 1285, 1289 (10th Cir. 1994). However, if the employer can prove that (1) the

---

[1] Plaintiff has withdrawn his request for prejudgment interest, so that issue is no longer before the Court.

violation occurred in good faith and (2) it had "reasonable grounds for believing that its act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C. § 260; *Doty v. Elias*, 733 F.2d 720, 725-26 (10th Cir. 1984). The employer must establish both prongs of § 260 to avoid or reduce an award of liquidated damages. *See Sapulpa*, 30 F.3d at 1289 ("Thus, the district court may eliminate or reduce the award of liquidated damages only if the employer demonstrates both that he acted in good faith and that he had reasonable grounds for believing that his actions did not violate the [FLSA].") (quotations omitted). Even if an employer can satisfy the two prongs of § 260, a court still has discretion to award some or all of the liquidated damages. *See id.*

To meet the good faith prong of § 260, the employer must show that it had an "honest intention to ascertain and follow the dictates of the [FLSA]." *Renfro v. City of Emporia*, 948 F.2d 1529, 1540 (10th Cir. 1991). The reasonableness prong "imposes an objective standard by which to judge the employer's behavior." *Sapulpa*, 30 F.3d at 1289. To show that it had reasonable grounds for believing that its acts or omissions did not violate the FLSA, an employer can present evidence of reliance on attorneys or other experts in personnel matters as the basis for its challenged conduct. *See Pabst v. Oklahom Gas & Elec. Co.*, 228 F.3d 1128, 1136-37 (10th Cir. 2000.)

The Court should also point out that the liquidated damages question is for the court to decide, whereas the willfulness question is usually answered by the jury.

However, the Tenth Circuit Court of Appeals has held that if the jury finds a willful violation, the jury's factual finding on this issue prohibits the district court from reaching a contrary conclusion on the liquidated damages issue because the legal standards are the same. *See Brinkman v. Deparment of Corrections*, 21 F.3d 370, 372-73 (10th Cir. 1994).[2]

## **DISCUSSION**

Under *Brinkman*, the jury's conclusion in this case that Defendant acted willfully implies that Defendant lacked good faith and/or acted without reasonable grounds to believe that its conduct complied with the FLSA. In other words, *Brinkman* makes it difficult if not impossible for Defendant to meet its burden under § 260 to avoid imposition of liquidated damages. With this reasoning in mind, Plaintiff contends that he is entitled to a full liquidated damages award because the jury already decided that Defendant acted willfully.

In response, Defendant concedes that the jury found that it acted willfully, but argues that the jury's decision cannot be supported by fact or law.[3] Defendant points out that it paid Plaintiff for all of the overtime Plaintiff reported on his time sheets and

---

[2] Although the standards are the same for the statute of limitations and liquidated damages issues, the burdens of proof are different; a plaintiff must prove willfulness to obtain the benefit of the three-year statute, but the defendant must prove the twin prongs of § 260 to potentially avoid liquidated damages. *See Fowler v. Incor*, 279 Fed. Appx. 590, 599-600, 2008 WL 20109598, **9 (10th Cir. May 12, 2008). Thus, a plaintiff could hypothetically fail to prove a willful violation, but still be entitled to liquidated damages if the defendant fails to prove good faith and reasonable grounds.

[3] Defendant intimates that it will file a motion under Federal Rule 50(b) for judgment as a matter of law on this issue after judgment is entered.

argues that because Plaintiff did not submit all of his time, Defendant could not have actual knowledge that Plaintiff worked the overtime hours at issue in this lawsuit without being paid overtime.  Thus, Defendant argues that the jury's verdict could only be based on constructive knowledge, *i.e.*, Defendant should have known about Plaintiff's uncompensated overtime hours.  Defendant goes on to argue that constructive knowledge is tantamount to negligence or unintentional conduct, "and is many steps down the culpability scale from willful conduct."  (Doc. # 90 at 3.)  Defendant contends that because the jury could only have concluded that Defendant acted unintentionally or negligently at most, and not in a knowing, willful manner, the jury's willfulness finding is unsupported by the evidence and contrary to law.  Taking Defendant's theory to the final step, Defendant argues that the jury's error in finding a willful violation cannot support a liquidated damages award.

However, the Court disagrees with Defendant and concludes that testimony in the record supports the jury's willfulness conclusion, thereby contradicting the key element in Defendant's position.

**I.    EVIDENCE IN THE RECORD SUPPORTS THE JURY'S CONCLUSIONS.**

    A.    <u>The Record Supports The Jury's Finding That Defendant Knew Plaintiff Was Not Receiving Overtime Compensation</u>.

The critical flaw in Defendant's theory is that the jury had evidence from which they could reasonably conclude that Defendant *knew* Plaintiff was not being compensated for attending various meetings and picking up paychecks.  To wit, Plaintiff testified regarding a heated conversation he had with Defendant's owner, Neal House,

on the topic of overtime compensation.  Plaintiff stated that Mr. House berated him for reporting overtime on Plaintiff's time sheets and that Mr. House accused Plaintiff of giving himself a pay raise by reporting more than forty hours per week.  This exchange, even if it occurred prior to the three-year limitations period in this case, would allow a reasonable jury to conclude that Mr. House *knew* Plaintiff was working overtime because Plaintiff's job duties did not change dramatically after the meeting or during the limitations period.  Moreover, given Mr. House's lambasting of Plaintiff, the jury could reasonably conclude that Plaintiff failed to report all of his future overtime hours out of fear of reprisal or scolding from Mr. House.

Also, as Defendant admits in its brief, well after the conversation with Mr. House, Plaintiff continued to complain to multiple high-level employees within Defendant's organization about attendance at the mandatory language and safety meetings.  Plaintiff also testified that he complained about having to pick up paychecks and deliver them to the office.  The fact that Plaintiff's complaints related generally to attendance at meetings and picking up paychecks, and not specifically to a lack of compensation for these tasks, does not preclude the jury from reasonably concluding that Defendant knew that Plaintiff was not being paid overtime.  Indeed, it does not take a large leap in logic to infer that lack of pay was the driving issue behind Plaintiff's complaints about extra work.  Defendant argues that these employees never told Mr. House about Plaintiff's complaints and, therefore, the knowledge cannot be attributed to Defendant.  However, this argument ignores that fact that the standard is not whether Mr. House

knew, but whether Defendant, *i.e.*, the corporate entity, knew about Plaintiff's uncompensated overtime. In any event, given the close-knit nature of Defendant's organization, the jury could just have reasonably decided that Plaintiff's multiple complaints did make their way to Mr. House.

Additionally, employees testified that Defendant required masonry foreman to attend the extra-curricular meetings. However, instead of receiving overtime pay, the foremen were supposed to "flex" their time, so that it totaled forty hours per week, *i.e.*, they were supposed to cut short other work days to account for the longer hours necessitated by the meetings. Although the flextime policy was somewhat diaphanous, testimony indicated that the policy was unwritten, but generally known throughout the masonry foreman, the jury could reasonably infer from Defendant's imposition of the unwritten flex time policy that Defendant knew about overtime being performed by the foreman, and sought to reduce expenses with the flex time policy. Why would Defendant have instituted the flex time policy if it did not know about problems with overtime and overtime compensation?

Moreover, contrary to Defendant's argument, the parties' factual stipulations do not undermine the jury's willfulness conclusion. The parties stipulated that "[Plaintiff] was paid for all of the regular and overtime hours that he reported on his time sheets." (Doc. # 88, Ex. 2 at Instruction No. 5.) The fact that Defendant paid Plaintiff for all of the time reported on his time sheets does not imply that Defendant did not know about Plaintiff's unrecorded overtime. Indeed, Defendant may have paid Plaintiff for all of the

hours that Plaintiff recorded, but this fact alone does not foreclose the idea that Defendant also knew about Plaintiff working unrecorded hours without pay.

In short, evidence in the record supports the idea that Defendant knew that masonry foreman like Plaintiff worked overtime as a result of safety and language meetings and other job tasks. Moreover, Plaintiff presented sufficient evidence, *e.g.*, his exchange with Mr. House and complaints to other employees, to support the jury's finding that Defendant knew specifically about Plaintiff's own uncompensated overtime.

B.  The Record Supports The Jury's Finding That Defendant Willfully Violated The FLSA.

Evidence in the record also supports the jury's conclusion that Defendant acted willfully; that is, that Defendant knew or reckless disregarded the matter of whether its conduct complied with the FLSA. For example, Defendant's former controller testified that she raised issues of FLSA compliance vis-a-vis uncompensated foreman meetings and tasks with Mr. House prior to Plaintiff's lawsuit. Mr. House responded that he had dealt with the government on these issues before, and, if necessary, he would deal with it again.[4] This testimony allowed the jury to reasonably conclude that Mr. House "either knew or showed reckless disregard for the matter of whether" mandatory attendance at the foreman meetings without compensation "was prohibited by the [FLSA]."

---

[4] Regardless of the jury's willfulness conclusion, Mr. House's response to the controller's questions regarding FLSA compliance certainly does not support an "honest intention to ascertain and follow the dictates of the [FLSA]." *Renfro*, 948 F.2d at 1540 (describing good faith prong of § 260).

Moreover, Defendant did not present any evidence to establish that it mistakenly thought its policies and conduct complied with the FLSA.  For example, Defendant did not show that it consulted with a lawyer or other expert in personnel matters to determine whether its unwritten flex-time policy complied with the FLSA.  Instead, Defendant presented testimony from other employees who simply accepted Defendant's overtime policy as a fact of life.  However, just because other, non-expert employees accepted the overtime policy does not mean that it was reasonable for Defendant to use it.  Testimony by other employees with zero knowledge of the FLSA's overtime requirements is not akin to evidence showing that Defendant consulted with a lawyer or with the Department of Labor regarding its policy.[5]

Indeed, testimony by multiple witnesses showed that Defendant's flex time policy for masonry foreman was something of a homegrown concoction, created primarily to contain costs but with little or no concern as to whether it complied with the letter of law.  This type of behavior – lack of expert consultation and creation of a fly-by-night flex time policy – allowed the jury to reasonably find that Defendant knew that it did not comply with the law or showed reckless disregard for whether its actions complied with the FLSA.

---

[5]  In fact, the only evidence in the record regarding whether Defendant sought or received any expert advice on its overtime compensation policy was the above-mentioned conversation between Mr. House and Defendant's controller in which the controller advised Mr. House that the policies may *not have complied* with the FLSA.

## II.  CASE LAW DOES NOT CONTRADICT THE JURY'S CONCLUSIONS.

Defendant's citation to various cases finding no willful conduct in circumstances when the employee was responsible for self-reporting overtime does not affect the jury's conclusion in this case.

For example, in *Pabst*, the district court found in favor of the plaintiffs on their overtime claim, but declined to award liquidated damages; both parties appealed the adverse rulings.  The defendant contended that the plaintiffs, who were responsible for reporting their own "on call" time, reported some of their on call time, but not all of the time for which they sought compensation.  *See* 228 F.3d at 1132-33.  The defendant argued that because the plaintiffs had reported some, but not all of their on call overtime, it lacked knowledge of the plaintiffs' unreported overtime and (a) could not be held liable for any unreported overtime and (b) not willfully violate the FLSA.  *Id.*  However, Judge Lucero noted that the defendant had established the on call program knowing what the employees' job responsibilities would be during the on call periods.  *Id.*  Judge Lucero also pointed out that, like Plaintiff in this case, one plaintiff in *Pabst* received a reprimand from the defendant when he tried to report all of his on call overtime.  228 F.3d at 1133.  Testimony regarding the reprimand lead Judge Lucero to conclude that the defendant's lack of knowledge theory was misleading and bordered on "disingenuous."  *Id.*  Thus, Judge Lucero affirmed a judgment in favor of the plaintiffs.

In response to the plaintiffs' request for liquidated damages, Judge Lucero indicated that the appellate panel might disagree with the district court's decision not to award liquidated damages. *Id.* at 1136 (noting that appellate court might reach a different conclusion as fact-finders). However, instead of reversing the district court, Judge Lucero noted that the willfulness inquiry was especially fact sensitive and he declined to go so far as to label the district court's decision an abuse of discretion. *Id.* at 1137.

A quick review reveals that *Pabst* does not require this Court to overturn the jury's verdict in this case. In fact, Judge Lucero's hesitance to affirm the district court's liquidated damages ruling on the basis of facts similar to the facts in this case probably support's Plaintiff's position more than Defendant's. If the *Pabst* decision establishes any precedent regarding liquidated damages, it is that the jury's willfulness conclusion is fact intensive and should not be disturbed by the Court without sufficient justification.

*Reich v. Department of Conservation & Nat. Res.*, 28 F.3d 1076, 1084 (11th Cir. 1994), provides a similar holding to *Pabst* – courts should not disturb the fact finder's conclusion regarding willfulness without a substantial reason. In *Reich*, the Eleventh Circuit Court of Appeals agreed with the district court that the defendant had not acted willfully. *Id.* In reaching this conclusion, the appellate court pointed out specific facts in the case, *e.g.*, the defendant's increased enforcement efforts, to support its conclusion. Contrary to Defendant's argument that *Reich* sets a precedent in cases when a employee was responsible for reporting his own hours, *Reich* was equivocal in its

11

treatment of the lower court's decision and based its holding solely on the facts of the case.

The remaining cases cited by Defendant in its brief offer similar inapposite holdings or factually distinct situations. Many of the cases cited involved situations when the court found that the defendants could not have known about the unreported overtime because the plaintiffs *never* mentioned the unpaid overtime to their employers. *See, e.g., Harvill v. Westward Comms., LLC*, 433 F.3d 428, 441 (5th Cir. 2005) (employee "presented *no* evidence that [defendant] was aware that she worked overtime hours without compensation") (emphasis in original); *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995) (employer could not have constructive knowledge of overtime when employee never complained or reported overtime hours); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (employer could not have known about uncompensated overtime because employee never complained). However, as noted above, these cases are distinguishable from this lawsuit because Plaintiff complained to Defendant on multiple occasions that he was working overtime and Defendant even acknowledged as much when Mr. House chided Plaintiff for reporting overtime.

Therefore, because the jury's verdict is not contrary to the evidence or the law, the Court concludes that Defendant has not met its burden to show that an award of liquidated damages is improper under *Brinkman* and 29 U.S.C. § 260. As such, the Court awards $10,753.13 in liquidated damages.

### III. PLAINTIFF'S REQUEST FOR ENHANCEMENT OF THE JUDGMENT

In his liquidated damages brief, Plaintiff asks the Court to enhance his judgment by $666.69 to alleviate tax liabilities Plaintiff will incur on the judgment. The Court notes that "courts do gross-up damage awards 'when a taxable award compensates a plaintiff for lost monies that would not have been taxable.'" *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1227 (10th Cir. 2007) (quoting *Home Savs. of Am. v. United States*, 399 F.3d 1341, 1356 (Fed. Cir. 2005)).

However, Plaintiff never made this request in his Complaint, in the Pre-Trial Order, or at trial. Moreover, Defendant has not had the opportunity to respond to Plaintiff's request since the briefing ordered by the Court was simultaneous. Finally, the request does not comply with the local rules of this Court. *See* D.C.COLO.LCivR 7.1. Thus, the Court will DENY the request.

Accordingly,

IT IS ORDERED that judgment is entered in favor of Plaintiff, and against Defendant in the amount of $10,753.13, plus liquidated damages of $10,753.13 for a total of $21,506.26;

IT IS FURTHER ORDERED that post-judgment interest shall accrue at the current legal rate from the date of entry of this judgment;

IT IS FURTHER ORDERED that Plaintiff shall have his costs by the filing of a Bill of Costs with the Clerk of this Court within ten days of the entry of judgment; and

IT IS FURTHER ORDERED that Plaintiff's request for enhancement of the judgment is DENIED.

DATED: July  8 , 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge