**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 06-cv-00224-CMA-CBS

JAMES MCGRATH,

    Plaintiff,

v.

CENTRAL MASONRY CORP.,

    Defendant.

---

**ORDER REGARDING MOTION FOR JUDGMENT AS A MATTER OF LAW**

---

    This matter is before the Court on Defendant's Combined Motion for Judgment as a Matter of Law Pursuant to F.R.C.P. 50(b) (Doc. # 95). The Motion is DENIED.

## INTRODUCTION AND BACKGROUND

    This case arises under the Fair Labor Standards Act ("FLSA"). Plaintiff, a former masonry foreman, alleged that Defendant, his former employer, failed to pay him overtime compensation (*i.e.*, time-and-a-half) for hours that Plaintiff worked, but did not report on his time sheets. The parties tried the case to a jury in March and April 2009. The jury returned a verdict in Plaintiff's favor, finding that Defendant willfully violated the FLSA by failing to pay Plaintiff $10,753.13 in overtime compensation. The Court entered judgment on the verdict in July 2009.

    Defendant argues that the jury's verdict is unsupported by the evidence and must be overturned. More specifically, Defendant contends that Plaintiff did not present

sufficient evidence from which the jury could determine that Defendant knew or should have known that Plaintiff performed work for which he did not receive overtime compensation. Defendant also contends that Plaintiff did not present evidence to support the jury's verdict regarding the number of uncompensated overtime hours Plaintiff claimed to have worked. Defendant further argues that the Court should enter judgment as a matter of law with respect to nine weeks during which Plaintiff worked less than forty hours, but more than thirty-six and one-half hours. Finally, Defendant reiterates its earlier argument that the jury's verdict finding that Defendant willfully violated the FLSA must be overturned.

## STANDARD OF REVIEW

Under Federal Rule 50(b), a party may make a renewed motion for judgment as a matter of law within ten days of the entry of judgment. *See* Fed. R. Civ. P. 50(b). A movant is entitled to judgment as a matter of law only if the evidence would not permit a reasonable jury to find in the non-movant's favor. *See Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000); *see also Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999) (judgment as a matter of law "is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion") (internal quotations omitted). Although the court must view the evidence in a light favorable to the non-movant, the court should not re-weigh the evidence, judge witness credibility, or challenge the factual conclusions of the jury. *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1450 (10th Cir. 1997).

## ANALYSIS

Defendant raises four issues on which it believes it is entitled to judgment as a matter of law.

**I.     DEFENDANT'S KNOWLEDGE OF PLAINTIFF'S OVERTIME HOURS**

First, Defendant contends that no reasonable jury could have found that Defendant had actual or constructive knowledge that Plaintiff worked overtime without receiving overtime compensation.

   A.     Applicable Law

An employer may be held liable under the FLSA "[i]f the employer knows or has reason to believe that the [overtime] work is being performed."  *See, e.g.,* 29 C.F.R. § 785.12.  However, "[i]f an employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of alleged overtime work, the employer's failure to credit that overtime is not a violation of the FLSA."  *Robertson v. Board of County Comm'rs of County of Morgan*, 78 F. Supp. 2d 1142, 1158 (D. Colo. 1999) (citing *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) and *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)).

   B.     Actual Knowledge

Regarding Defendant's actual knowledge of Plaintiff's overtime, the parties did not dispute that Plaintiff had the responsibility to report his own hours on time sheets and that he did not report the overtime hours for which he sought overtime compensation on his time sheets during the three years at issue.  Building on Plaintiff's failure to

report his own overtime hours, Defendant argues that Plaintiff did not present any other evidence from which a reasonable jury could have found that Defendant had actual knowledge that Plaintiff worked overtime without being compensated. For example, Defendant argues that Plaintiff never complained to Defendant that he worked overtime or that his time sheets were inaccurate. Defendant also argues that Plaintiff's complaints to various employees, including Victor Curci, Dawn Forst, and Lana Szczepanski, were not specific enough to permit a jury to find that Defendant had actual knowledge of Plaintiff's unreported overtime hours.

However, the Court finds sufficient evidence to allow a reasonable jury to find that Defendant knew that Plaintiff worked overtime without compensation. Defendant ignores the heated conversation Plaintiff had with Defendant's owner, Neal House, regarding a request that Plaintiff made for overtime compensation. Although this conversation took place before the time period at issue in this case, the jury could have reasonably inferred from this conversation that Mr. House knew Plaintiff was working overtime because Plaintiff worked overtime before and his job had not changed appreciably since the conversation. Further, given Mr. House's negative reaction to Plaintiff's request for overtime compensation, the jury could also reasonably infer that Mr. House (and others management employees who heard about the conversation) knew that Plaintiff was reluctant to request or report overtime compensation for fear of being fired or demoted.

Moreover, as the Court previously pointed out in the Order Regarding Liquidated Damages (Doc. # 91), Plaintiff had multiple conversations with management-level employees within Defendant's organization regarding the time Plaintiff spent attending work meetings, picking up paychecks, and arriving early at job sites. Plaintiff presented evidence reflecting that he complained to at least three senior employees that he had a problem with the number of hours that he was working. Admittedly, Plaintiff did not complain about the exact number of hours he worked or the amount of money he felt Defendant owed him, but Plaintiff need not have provided exact hourly requests to survive a motion for judgment as a matter of law because even these general complaints allowed the jury to reasonably infer that Defendant had actual knowledge of Plaintiff's uncompensated overtime, if not the specific number of hours.

Contrary to Defendant's argument, the fact that Mr. Curci and Ms. Forst and Szczepanski did not tell Mr. House about Plaintiff's complaints does not reflect that Defendant lacked actual knowledge. Nor does the fact that Mr. Curci and Ms. Forst and Szczepanski responded to Plaintiff's complaints by telling Plaintiff to talk with Mr. House. The standard under the FLSA is not whether Mr. House had knowledge of the overtime, but whether Plaintiff's employer, *i.e.*, the corporation, had knowledge. Because Plaintiff complained to management, including Defendant's Vice President, Mr. Curci, the jury could reasonably conclude that Defendant – the corporation – knew about Plaintiff's overtime, even if Mr. House did not.

Moreover, as the Court noted in the Order Regarding Liquidated Damages, the evidence established that Defendant was a relatively close knit organization. This evidence would allow a reasonable jury to infer that even Mr. House had actual knowledge of Plaintiff's uncompensated overtime. Defendant contends that this inference is unreasonable because Defendant's employees testified they did not tell Mr. House about Plaintiff's complaints and the Court is bound by this testimony. However, Defendant ignores Mr. Curci's testimony wherein Mr. Curci stated that, if he felt he could not address an employee's complaints himself, he would report the complaints to Mr. House. Given that Mr. Curci could not address the overtime issue himself, it was reasonable for the jury to infer that Mr. Curci followed his usual policy and notified Mr. House of Plaintiff's complaints.

Thus, although inferential, the evidence allowed the jury to reasonably determine that Defendant had actual knowledge that Plaintiff worked overtime without appropriate compensation.

### C. Constructive Knowledge

Defendant also argues that the evidence does not permit a reasonable jury to find that Defendant had reason to believe that Plaintiff worked overtime.

      1. *Isolated instances versus a pattern or practice of uncompensated overtime.*

Relying heavily on a pair of Fourth Circuit cases, *Pforr v. Food Lion, Inc.*, 851 F.2d 106 (4th Cir. 1988) and *Bailey v. County of Georgetown*, 94 F.3d 152 (4th Cir. 1996), Defendant argues that the jury could not have reasonably found that Defendant

6

had constructive knowledge of Plaintiff's overtime hours.  More specifically, Defendant argues that Plaintiff produced evidence that Defendant knew of only isolated instances of overtime work, which cannot support the jury's verdict finding Defendant liable for three years of overtime work.

In *Pforr*, the Fourth Circuit Court of Appeals reversed a district court's award of overtime compensation under the FLSA because the appellate court found that the plaintiffs' evidence that the defendant knew of and permitted plaintiffs to work overtime without compensation in a "few instances" did not support an award of overtime damages for the three-year period alleged by the plaintiffs.  851 F.2d at 108-10.

A similar situation occurred in *Bailey*, wherein the plaintiffs were a group of sheriff's deputies who claimed they had not been compensated for overtime work over a period of three years.  94 F.3d at 153-54.  The district court granted a directed verdict for the defendant because it found that the only evidence establishing that the plaintiffs had worked the overtime hours they claimed to have worked during the three year time period at issue was testimony that one new employee had not reported "a couple of hours" on his time sheet and the defendant's payroll supervisor had heard that "some of the deputies were not recording all of their hours."  *Id.* at 157.  The Fourth Circuit Court of Appeals agreed with the district court that these isolated incidents were insufficient to put the defendant on notice that, over the three-year period at issue, the plaintiffs had routinely worked overtime without compensation.

In contrast to *Pforr* and *Bailey*, Plaintiff in this case presented evidence sufficient to raise factual disputes regarding the issue of whether Defendant permitted Plaintiff to attend the almost-monthly foreman meetings, pick up paychecks after work each week, and arrive at the job site early on a regular basis during the three years in question. For example, Plaintiff testified that he usually arrived one half-hour early to the job site each day to unlock the tool boxes and gates and supervise any masons who might be there mixing the mortar.[1] Critically, Plaintiff testified that Mr. House was the one who told Plaintiff to arrive early. Thus, the jury could reasonably find that Mr. House knew Plaintiff arrived early to work each day because Mr. House told him to do so.

Plaintiff also testified that he attended foreman meetings, including Spanish classes and safety meetings, without receiving compensation. Plaintiff testified that the meetings usually lasted two to three hours and were held almost monthly during the period in question. Mr. Curci corroborated Plaintiff's testimony regarding the foreman meetings. Indeed, Mr. Curci stated that he also attended the two- to three-hour foreman meetings roughly once per month and he acknowledged that Plaintiff attended the meetings regularly.

Ms. Szczepanski also testified that Plaintiff regularly attended the foreman meetings and that the meetings typically ran from 5:00 p.m. to 7:30 or 8:00 p.m. on Thursday evenings. Ms. Szczepanski also stated that she discussed the need to

---

[1] Defendant presented evidence from Luis Martinez that called Plaintiff's testimony into question, but the jury could believe Plaintiff's testimony instead of Mr. Martinez's testimony and the Court will not upset the jury's conclusion.

compensate non-exempt employees, like Plaintiff, for their attendance at the foreman meetings with Mr. House and that Mr. House knew that such employees should be compensated for their attendance at the meetings. Thus, a reasonable jury could conclude that Mr. House knew his employees were not receiving compensation for attending the meetings. In contrast to the isolated instances of overtime described in *Pforr* and *Bailey*, the foreman meetings occurred almost monthly and Mr. Curci and Ms. Szczepanski's testimony allowed the jury to reasonably infer that Defendant had a pattern or practice of permitting Plaintiff to attend monthly foreman meetings without compensating him for his attendance.

Likewise, the evidence at trial raised factual disputes regarding Defendant's knowledge of Plaintiff's weekly trips to pick up paychecks. Ms. Szczepanski, Defendant's controller, testified that foremen could not pick up paychecks for their work crew until after 4:00 p.m. on Thursday afternoons. She stated that this 4:00 p.m. rule came directly from Mr. House. Given that Defendant knew that the foremen typically arrived on the job site very early in the morning,[2] Ms. Szczepanski's testimony regarding the 4:00 p.m. rule raised a factual issue regarding whether Defendant knew that a typical Thursday resulted in overtime work for Defendant's foremen.

---

[2] Plaintiff stated that he usually arrived at 6:30 or 7:00 a.m. and Mr. Martinez, testified that a typical day began at 7:00 a.m.

        2.     *The Flex Time Policy*

Defendant contends that because it used a "flex time" policy to avoid paying overtime compensation, no reasonable jury could find that it had constructive knowledge of Plaintiff's uncompensated overtime hours. However, Defendant's implantation of the flex time policy raised multiple factual issues that the jury reasonably resolved in Plaintiff's favor. For example, Plaintiff testified that he did not know about the flex time policy and did not use it in reporting his hours. Defendant contends that Doug Gates' testimony contradicted Plaintiff on this issue, but the dispute between Plaintiff and Mr. Gates is exactly the type of factual and credibility dispute that a jury must resolve. Moreover, Defendant never reduced the flex time policy to writing, which raised questions regarding whether Plaintiff knew about the policy and whether Defendant uniformly applied the policy to its foremen. Additionally, as Plaintiff points out and the Court noted in the Order Regarding Liquidated Damages, when viewed in a light favorable to Plaintiff, Defendant's imposition of a flex time policy cuts against Defendant's argument: Why would Defendant have instituted the flex time policy to address overtime hours if it did not know about its employees performance of overtime work? The jury, and not the Court, must answer this factual question.

Although the Court will deny Defendant's Motion on the knowledge issue, the Court does not intend to sound a ringing endorsement for Plaintiff's case. Indeed, Plaintiff presented very little direct evidence of Defendant's knowledge and much of Plaintiff's evidence required the jury to infer that Defendant had actual or constructive

knowledge of Plaintiff's uncompensated overtime hours. However, under the applicable standard of review, the Court must view the factual record in a light favorable to Plaintiff and, under the favorable light, the Court concludes that Plaintiff has presented enough evidence to survive Defendant's motion on the issue of actual or constructive knowledge.

## II.  BURDEN OF PROOF AND SUFFICIENCY OF THE DAMAGES EVIDENCE

Next, Defendant contends that it is entitled to judgment as a matter of law because Plaintiff's evidence regarding the number of uncompensated overtime hours he claimed to have worked did not satisfy the applicable burden of proof.

### A.  Applicable Law

A plaintiff bears the burden of establishing his damages, *i.e.*, the number of uncompensated hours worked. However, under the FLSA, an employer must "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ." 29 U.S.C. § 211(c). An employer's compliance, or lack thereof, with this section of the FLSA determines the burden of proof faced by a plaintiff in establishing the number of overtime hours worked. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *see also Baker v. Barnard Constr. Co., Inc.*, 146 F.3d 1214, 1220 (10th Cir. 1998) (citing *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 85-86 (10th Cir. 1983)).

If an employer complies with section 211(c), a plaintiff must prove "with definite and certain evidence" that he worked overtime hours for which he did not receive overtime compensation. *See Reeves v. IT & T*, 616 F.2d 1342, 1351 (5th Cir. 1980). However, as the Supreme Court stated in *Anderson*:

> [W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises . . . . In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson*, 328 U.S. at 687-88. Thus, under *Anderson*, if the employer does not comply with section 211(c), the plaintiff must only meet the just and reasonable inference burden of proof.

  B.   Defendant's Non-Compliance With 29 U.S.C. § 211(c)

In this case, Defendant contends that it has complied with section 211(c) because it generated, preserved, and produced records relating to Plaintiff's wages, promotions, time sheets, pay stubs, and other personnel information. Thus, it contends that Plaintiff must meet the definite and certain evidence burden of proof to establish the number of overtime hours he worked. Alternatively, even if Defendant did not comply with section 211(c), Defendant contends that Plaintiff cannot satisfy the lower "just and reasonable inference" standard of proof from *Anderson*.

Plaintiff responds that Defendant's time records are inaccurate because they fail to account for Plaintiff's overtime. Thus, Plaintiff argues that the *Anderson* burden of proof should apply and that he met it.

The burden to maintain accurate records falls on the employer regardless of whether the employee is responsible for recording his own hours on a time sheet. *See Skelton v. American Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1071-72 (N.D. Ill. 2005) (holding that employer must maintain accurate time records notwithstanding the fact that employees were responsible for submitting time sheets and failed to submit overtime hours). Indeed, the Supreme Court's reasoning in *Anderson* makes it clear that an employer should not benefit from its own failure to maintain an adequate and accurate record-keeping system.

In this case, Defendant's records did not reflect the hours actually worked by Plaintiff. Thus, because Defendant's records are inaccurate and/or inadequate to determine the number of overtime hours worked by Plaintiff, the Court agrees with Plaintiff that *Anderson*, rather than *Reeves* provides the applicable burden of proof.

    C.    <u>Sufficiency of Plaintiff's Evidence</u>

Plaintiff estimated the number of overtime hours he worked on a weekly basis, which he added to the time he claimed he spent at foreman meetings, to arrive at the total number of overtime hours he worked over the course of the three years at issue. Defendant contends that Plaintiff's evidence regarding Plaintiff's alleged overtime hours is uncorroborated and speculative and, therefore, insufficient to sustain the jury's

verdict.  The Court agrees that Plaintiff's damages evidence could have been more precise, but under the deferential standard in *Anderson*, the Court concludes that Plaintiff has presented sufficient evidence to permit a reasonable jury to find in his favor.

Regarding Plaintiff's claim that he arrived to work one-half-hour early each morning, Defendant contends that Plaintiff's testimony is uncorroborated and lacks documentary support.  However, the Court concludes that Plaintiff provided enough details regarding his job tasks during the half-hour-per-day period to permit a reasonable and just inference that Plaintiff worked those hours.  For example, Plaintiff provided specific testimony that he usually arrived before the other masonry workers to open the tool boxes and unlock the gate so that the masons could begin their day on time.  Plaintiff also testified that it was his understanding that as a "competent person" under OSHA regulations, he was required to be on the job site whenever Defendant's employees were working.  Moreover, towards the end of his tenure with Defendant, Plaintiff began to record his work activities, including his arrival and departure times, in a log.  This log reflects that Plaintiff arrived early to the job site on many occasions and stayed late on other days.

Regarding the two to three hours per month that Plaintiff allegedly spent at foreman meetings, Plaintiff provided corroborating testimony from other employees, *e.g.*, Mr. Curci, that supported Plaintiff's allegations as to the frequency and length of the meetings and Plaintiff's regular attendance record.  Defendant argues that Plaintiff's testimony was impeached by the testimony of Rangel Garcia, but the dispute between

Plaintiff's testimony and Mr. Garcia's testimony must be resolved by the jury, not this Court. Thus, the Court concludes that Plaintiff has presented sufficient evidence to allow the jury to arrive at a just and reasonable inference regarding the meeting hours.

Likewise, Plaintiff presented corroborating testimony and documentary evidence to support his allegations regarding the time he spent picking up pay checks on Thursday afternoons. Indeed, Mr. Gates stated that he, like Plaintiff, always personally picked up the paychecks for his crew. Moreover, Ms. Szczepanski testified that it was her understanding that the foreman were not supposed to pick up the paychecks before 4:00 p.m., yet the typical workday ended at 3:30 p.m., so Plaintiff likely spent anywhere from thirty minutes to an hour and a half picking up the paychecks. Plaintiff also introduced undisputed evidence from his log reflecting that he spent between forty-five minutes and one and one-half hours picking up the checks.

The case law cited by Defendant is largely inapposite to this case. For example, the facts of this case are distinguishable from the facts in *Krohn v. David Powers Homes, Inc.*, 2009 WL 1882989 (S.D. Tex. June 30, 2009). In *Krohn*, the plaintiff sought to rely on inadmissible evidence to support the number of overtime hours she claimed to have worked and she provided only a vague generalized average estimate of the hours she allegedly worked on a weekly basis. *Id.* at *3-*4. In this case, in contrast, Plaintiff based his hourly calculations on specific tasks he performed at work; Plaintiff's estimate contained far more detail than the plaintiff in *Krohn*. Further, undisputed testimony from other employees corroborated many of Plaintiff's allegations.

15

In short, Plaintiff's estimate regarding the number of hours he worked during the three years at issue, although not perfect, allowed the jury to justly and reasonably infer that Plaintiff actually worked the overtime hours he claims to have worked.

### III.  LESS THAN FORTY-HOUR WEEKS

In response to Defendant's Motion for Directed Verdict, the Court ruled that Plaintiff had presented enough evidence to submit to the jury that he worked three and one-half hours overtime per week during the period at issue, exclusive of the time he spent at foreman meetings.  Then, based on Plaintiff's time sheets, the Court found that Plaintiff had worked less than thirty-six and one-half hours in thirty-nine weeks during the relevant time period.  Thus, the Court granted Defendant's Motion for Directed Verdict on claims arising from those thirty-nine weeks because the Court concluded that the jury could not reasonably have found that Plaintiff worked overtime during those weeks.[3]

Defendant now moves for judgment as a matter of law on claims arising from nine weeks during the relevant time period in which Plaintiff reported less than forty hours, but more than thirty-six and one-half hours on his time sheets.  Defendant essentially combines its arguments in this Motion with its Motion for Directed Verdict and contends that because Plaintiff could not amend his complaint to state a claim for

---

[3]  The Court also denied Plaintiff's oral motion to amend his complaint to state a claim for straight time for those weeks.

straight time, no reasonable jury could find that Plaintiff worked overtime in those nine weeks.

The Court finds Plaintiff's response brief utterly lacking in substance on this issue, but the Court will nonetheless deny Defendant's Motion on this issue. For the reasons described above, the Court has concluded that Plaintiff's evidence regarding his estimated overtime hours – three and one-half hours per week plus the foreman meetings – meets the applicable burden of proof in this case. Thus, the Court concludes that a reasonable jury could find that Plaintiff worked some overtime during each of the nine weeks in which Plaintiff alleged that he worked more than thirty-six and one-half hours, but less than forty hours. Although the Court recognizes that a jury could not find that Plaintiff worked the entire three and one-half hours per week, the math works in Plaintiff's favor. By way of example, even if Plaintiff reported only thirty-seven hours in a given week, the jury could reasonably find that Plaintiff worked one-half hour of uncompensated overtime. This possibility is enough to overcome Defendant's Motion for Judgment as a Matter of law on this issue.

## IV. WILLFULNESS

Although the Court has already addressed this issue in the Order Regarding Liquidated Damages (Doc. # 91), Defendant also challenges the jury's conclusion that Defendant acted wilfully in violating the FLSA. Defendant offers no new arguments in support of this contention but, rather, rests on the arguments it made in earlier briefing on the issue. Since Defendant presents no new arguments to warrant re-visiting the

Court's decision on that issue, the Court declines to overrule the jury's conclusion on this issue.

## **CONCLUSION**

The Court acknowledges that Plaintiff's evidence contained numerous deficiencies. At most, these deficiencies raised factual issues appropriate for the jury's determination. Morever, when the Court views the entirety of the record in a light favorable to Plaintiff, the Court concludes that Plaintiff presented evidence sufficient to support a reasonable jury verdict in his favor.

Accordingly, Defendant's Motion for Judgment as a Matter of Law (Doc. # 95) is DENIED.

DATED:  September __29__, 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge